IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIMINAL NO. LKG-24-0137 |
| CLARENCE LYNCH, | * | |
| Defendant | * | |

*******

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its undersigned counsel, hereby submits the following memorandum in aid of sentencing in the above-captioned case, which is scheduled for September 2, 2025, at 1:00 p.m. For the reasons set forth below, the Government requests that the Court impose a sentence of 106 months, which the Government believes is a sentence sufficient, but no greater than necessary, to achieve the sentencing goals set forth in 18 U.S.C. § 3553.

**I.      Procedural Background and Crimes of Conviction**

On April 25, 2024, Clarence Lynch ("Lynch" or the "Defendant") was charged in a three-count indictment with conspiracy to interfere with interstate commerce by robbery, in violation of 18 U.S.C. § 1951(a), interference with interstate commerce by robbery, in violation of 18 U.S.C. § 1951(a), and use, carry, and brandish a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). (ECF No. 1.) The Defendant had his initial appearance on July 10, 2024. (ECF No. 9.) On March 18, 2025, the Defendant was charged in a two-count superseding information with interference with interstate commerce by robbery, in violation of 18 U.S.C. § 1951(a), and use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). (ECF No. 52.)

Pursuant to a written plea agreement (ECF No. 57 (the "Plea Agreement")), on May 6, 2025, the Defendant pleaded guilty to the two counts of the superseding information, which carried for count one, a maximum statutory sentence of 20 years' imprisonment, up to three years on supervised release, and up to a $250,000 fine; and for count two, a mandatory minimum sentence of five years and a maximum statutory sentence of life imprisonment consecutive to any other term of imprisonment, up to five years on supervised release, and up to a $250,000 fine.

After accepting the Defendant's guilty plea and adjudging him guilty, the Court directed the U.S. Probation Office ("Probation") to prepare the Pre-Sentence Investigation Report ("PSR"), which was filed on July 9, 2025. (ECF No. 60 ("PSR").) The Court scheduled the Defendant's sentencing hearing for September 2, 2025. (ECF No. 59.)

II.   **Stipulation of Facts**

In the Plea Agreement, the parties stipulated and agreed that, if this case had proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt.

> On August 4, 2023, at approximately 4:46 a.m., the Defendant, CLARENCE ANTONIO LYNCH ("LYNCH"), traveled to a convenience store at 605 7th Street, Laurel, MD 20707 ("Business-1") in a dark colored sports utility vehicle, with the intention of robbing Business-1. LYNCH was armed with at least one firearm, and committed the following acts, among others:
>
> 1.   Entered the store and used physical restraint to force an agent and employee of Business-1 ("Victim-1"), into the office of Business-1, by pulling Victim-1 by his collar and breaking Victim-1's necklace.
>
> 2.   Used a hydraulic tool to forcefully open the store's automated teller machine ("ATM") and took $65,780 in cash from the ATM's trays.
>
> 3.   Took Victim-1 into the store office, and with the use of a firearm, took $6,940 in cash from the office, as well as $11,852 in cigarettes, both of which were property of Business-1. The cash in the ATM was property of a financial institution ("Business-2").

Business-1 was part of an international chain of businesses and engaged in interstate commerce in ways including the sale of items produced and manufactured outside of the state of Maryland.

LYNCH knowingly took and obtained personal property in the presence of Victim-1; took this property against Victim-1's will by means of actual and threatened force, violence, and fear of injury, immediately and in the future; and as a result of the LYNCH's actions, interstate commerce, and an item moving in interstate commerce, were obstructed, delayed, and affected.

LYNCH committed the robbery and crime of violence described above with the knowledge and intention that a firearm was to be used during and in relation to the crime. As a result, during the commission of the robbery, a firearm was used to threaten Victim-1 with force, violence, and fear of injury, immediately and in the future, in order to take and obtain personal property in Victim-1's presence.

*See* Plea Agreement at Attachment A.

### III.   Sentencing Guidelines

The Government agrees that the calculations made by Probation within the PSR regarding the advisory U.S. Sentencing Guidelines ("Guidelines" or "U.S.S.G.") are correct. PSR at ¶¶ 17–28. Probation calculated the Defendant's Guidelines within the PSR as follows:

- The applicable base offense level for count one, Interference with Interstate Commerce by Robbery, is 20, pursuant to U.S.S.G. § 2B3.1;

- The adjusted offense level for count one is further increased by 2-levels, pursuant to U.S.S.G. § 2B3.1(b)(1), because the Defendant and his co-conspirators took property of a financial institution;

- The adjusted offense level for count one is further increased by 2-levels, pursuant to U.S.S.G. § 2B3.1(b)(4)(B), because a person was physically restrained to facilitate commission of the offense or to facilitate escape;

- The adjusted offense level for count one is further increased by 1-level, pursuant to U.S.S.G. § 2B3.1(b)(7)(B), because the loss amount exceeded $20,000, but was no more than $95,000;

- The adjusted offense level should be reduced by 3-levels, pursuant to U.S.S.G. §§ 3E1.1(a) and 3E1.1(b), because the Defendant has demonstrated acceptance of responsibility for the offense and has assisted authorities in the investigation or prosecution of the Defendant's own misconduct by timely notifying the Government of his intention to enter a plea of guilty;

- The base offense level for count two, Use of a Firearm During and in Relation to a Crime of Violence, is the term of imprisonment required by statute, pursuant to U.S.S.G. § 2K2.4.  The minimum statutory term of imprisonment for 18 U.S.C. § 924(c) is five years; and

- The Defendant's prior convictions result in a criminal history score of one and a criminal history category of I, pursuant to U.S.S.G. 5A.

Therefore, the Government agrees with U.S. Probation that the Defendant's Guidelines imprisonment range is 101 to 111 months (41 to 51 months for count one, plus five years consecutive for count two), based on a total offense level of 22 (for count one), a criminal history category of I, and a minimum consecutive term of five years' imprisonment (for count two).

IV.     **Section 3553(a) Factors**

The Government respectfully submits that a sentence of 106 months in prison, followed by a five-year term of supervised release, will be sufficient but no greater than necessary in light of the factors articulated in 18 U.S.C. § 3553(a).

A.     **Nature & Circumstances of the Offense**

This factor favors a long sentence based on the nature and circumstances of the offense. As described in the plea agreement, Defendant and his co-conspirators used the threat of violence – pointing a gun at a convenience store employee, then pulling him by his collar to a back office – to seize over $65,000 in cash.  In addition, this crime was not committed in a vacuum.  A hydraulic cutting tool was used to break into the ATM from which $65,780 was stolen.  When the Defendant was arrested on September 5, 2023, in Miami, Florida, he was at an Airbnb in which a hydraulic cutting tool was found that had been stolen during the burglary of a business in Laurel, Maryland, approximately 25 minutes before the armed robbery at the 7-Eleven.  *See* Exhibits 1 (Holmatro police report), 2 (Holmatro losses report), and 3 (Miami police report).  And location data for a cellular telephone associated with the Defendant placed him in the vicinity of the Laurel

burglary and the 7-Eleven at the times of the crimes. *See* Exhibits 4 (Instagram messages from Lynch sharing his phone number) and 5 (CAST mapping of that phone number). A photograph of the tool as found in Miami is below.



B.   **History and Characteristics of the Defendant**

The Defendant's history and characteristics do not necessarily favor a long sentence. The Defendant is a criminal history category of I, based on a June 27, 2023, Maryland conviction for property theft and wearing and carrying a loaded handgun on October 1, 2021. *See* PSR ¶ 31. That said, the Defendant was convicted of this Maryland crime a little over a month <u>before</u> he committed the instant federal offense, so the prior state criminal conviction did not deter the Defendant from committing further crime or escalating to more serious crime.

### C. Need to Reflect Seriousness of Offense and Other 3553(a)(2) Factors

The need for the sentence imposed to reflect the seriousness of the offense favors a long sentence. This is extraordinarily dangerous conduct, particularly given his willingness to use a firearm to hold up a store employee at gunpoint to carry out his scheme.

The need to promote respect for the law, and specific deterrence, also favors a long sentence. By the time the Defendant committed the offense for which this Court is asked to sentence him, he had already been sentenced by a state court weeks before and given the mercy of a suspended prison sentence.

As for general deterrence, a long sentence will signal to the public that this Court will not tolerate armed robbery, particularly when individuals like the Defendant are the ones who threaten others at gunpoint.

### D. Recommended Term of Supervised Release

The Government seeks the imposition of a five-year term of supervised release for the same reasons as discussed above. A significant period of supervised release will promote respect for the law and protect the public while the Defendant is under supervision. The Defendant has never been charged, nor sentenced, federally and would benefit from federal supervised release. He was previously on supervised state probation in Prince George's County, Maryland, in connection with his prior state conviction, when he committed the instant federal offense.

## V. Forfeiture

The Government asks the Court to incorporate into its judgment an anticipated motion for forfeiture of property and preliminary order of forfeiture.

## VI. Restitution

The Government also asks the Court to order restitution in the amount of $84,572. As part of his Plea Agreement, Henderson agreed to the entry of a restitution order for victim losses, which the parties stipulated was $84,572. Plea Agreement at ¶ 16.

## VII. Conclusion

For the foregoing reasons, and additional information that may be presented at the sentencing hearing, the Government respectfully requests that the Court impose a term of imprisonment of 106 months, followed by five years of supervised release, and a restitution order in the amount of $84,572, which the Government views as sufficient, but no greater than necessary, to achieve the purposes of sentencing.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

By:  /s/
Joshua A. Rosenthal
William D. Moomau
Assistant United States Attorneys

cc: Joseph Flood, Esq.
Kenneth Vernon Jr., U.S. Probation Officer